## OLIVER *v.* SCOTT.

### Opinion delivered March 1, 1915.

1. CONTRACTS—FORFEITURE FOR BREACH OF CONTRACT—FAILURE TO PAY TAXES.—A contract for the sale of land provided for the payment, regularly and seasonably, of all taxes, by the purchaser, and for a forfeiture for nonpayment. *Held*, the contract will not be declared forfeited when the purchaser paid the taxes thereon on the 16th day of April, or on any day up until the second Monday in June. The owner's right to prevent a forfeiture of his land for nonpayment of taxes continues, under the law of the State, until the second Monday in June, and a contract will not be declared forfeited, where the purchaser pays the taxes with the statutory penalty, at any time before forfeiture to the State.

2. CONTRACTS—PURCHASE MONEY NOTE—PAYMENT.—A. purchased land from B., giving notes for the purchase money. Before a certain note fell due, A. notified the cashier of a bank, where he kept his money, the bank being B.'s agent to collect the notes, to credit B.'s account with the amount of the note, and to charge his, A.'s, account with the same. This was done. *Held*, the transaction constituted a payment of the note, and the failure of the cashier to make proper entries on the note and his books as to the date of the transaction, will not affect its validity and binding effect.

Appeal from Logan Chancery Court, Southern District; *W. A. Falconer,* Chancellor; reversed.

On the 12th day of January, 1911, one C. C. Holland entered into a contract with Emma Scott and Ella Bradley for the purchase of certain lots in the town of Booneville. The contract provided, among other things, that Emma Scott and Ella Bradley agreed to sell to Holland the lots designated for the sum of $1,500, of which Holland paid $75 in cash, and executed nineteen notes for the sum of $75 each, one note falling due each successive four months after date until all of the notes. were due and paid.

The contract also provided, that the purchaser "will regularly and seasonably pay all such taxes and assessments as shall be lawfully imposed upon said premises; and further provided as follows:

"In case the said second party" (C. C. Holland) "legal representatives, or her assigns shall pay the several sums of money aforesaid, punctually, and at the several times above limited, and shall strictly and literally perform all and singular, the stipulations and agreements aforesaid, after their true tenor and intent, then and thereupon the first parties will make unto the said second party, her heirs and assigns, a warranty deed," etc. "But in case the said second party shall fail to make the payments aforesaid, or any of them, punctually, and upon the strict terms and at the times above limited, and likewise to perform and complete all and each of the agreements and stipulations aforesaid, strictly and literally, without any failure or default, time being the essence of this contract, then this contract shall, from the date of such failure, be null and void, and all rights and interests thereby created or then existing in favor of said second party, or heirs or assigns, or derived under this contract, shall utterly cease and determine, and the premises hereby contracted shall revert to and revest in the said first parties, heirs or assigns, (without any declaration of forfeiture or act of re-entry, or without any other act by said first parties to be performed, and without any right in said second party of reclamation or compensa-

tion, for moneys paid or improvements made), as absolutely and perfectly as if this contract had never been made.

"And it is hereby further covenanted and agreed by and between the parties hereto, that immediately upon the failure to pay any of the notes above described, all previous payments shall be forfeited to the party of the first part, and the relation of landlord and tenant shall arise between the parties hereto, for one year from January 1, immediately preceding the date of default," etc.

Mrs. Holland died in February, 1912, and on the first of May, 1912, the contract was assigned by her heirs to the appellant. He instituted this suit against the appellees, setting up the contract and the assignment thereof, and alleged that all payments that had matured prior to the assignment had been paid; that the next payment after the assignment was due May 12, 1912; that the notes had been placed by the appellees in the Citizens Bank at Booneville for collection as they fell due; that on May 12, 1912, when the next note became due appellant had the money on deposit in the bank to make the payment and had directed the cashier of the bank to credit the account of appellees with the amount of the payment out of this deposit; that the cashier notified the appellees that he had credited their account with the amount of the payment and that appellees disclaimed the payment of the note and claimed that the contract had been forfeited for nonpayment of taxes, which appellees claimed that they themselves had paid on April 16, 1912; that appellant afterward tendered to appellees the amount of the taxes and the amount of the note and all accrued interest, which appellees refused to accept, claiming that the contract had been forfeited.

Appellant further alleged that when the assignment was made to him he was told that the taxes had been paid. Appellant offered, in his complaint, to pay into court all remaining due under the contract for the lots whenever the appellees made him a warranty deed, and he asked for specific performance.

The appellees denied the assignment, admitted that all the notes that fell due prior to the alleged assignment to appellant had been paid; but they denied that any payment had been made since the death of Mrs. Holland, and alleged that time was of the essence of the contract; alleged that the taxes on the lots fell due April 10, 1912, and that the appellees paid the taxes. They denied that the notes had been put in the Citizens Bank for collection, and denied that they had ever directed the cashier of the Citizens Bank to enter credit on the note that fell due on May 12, 1912, and denied that appellant had the money in the bank to pay the note that fell due on that day. They asked that the plaintiff's complaint be dismissed for want of equity.

Appellant testified that the contract was assigned to him by the heirs of Mrs. Holland on May 1, 1912, and that he at once notified the appellees of that fact; that he had a general deposit account with the Citizens Bank of Booneville at the time and immediately after the contract had been assigned he notified the cashier of the bank of that fact and directed him to credit the account of appellees out of his deposit account with the amount of the next deferred payment note due May 12, 1912; that it was his understanding at the time the contract was assigned that the deferred payment notes were held by the Citizens Bank for collection; that at the time the next note became due he had a sufficient amount of money on deposit to make the payment; that the cashier of the bank informed him that the appellees refused to accept payment of the note falling due May 12, 1912, claiming that the contract had been forfeited for the nonpayment of taxes; that thereupon he made a personal tender to the appellees of the amount of the taxes, with interest, and that appellees refused to accept the same; that he was informed when the assignment was made that the taxes payable in 1912 had been paid; that after the appellees refused to accept the payment of the note due May 12, 1912, and the taxes, he offered to pay the entire amount

of all unpaid notes and appellees refused to treat with him any further about it.

The cashier of the bank corroborated the testimony of the appellant to the effect that the notes had been placed in the bank by the appellees for collection, and that the bank was acting as agent for the appellees in the matter; that the bank had collected all the preceding notes under the contract, being in all four notes. The bank had collected these notes and credited them to the general deposit account of the appellees. The cashier also testified that the appellant had a sufficient amount to his credit on the 12th of May, 1912, to pay the note falling due on that date, and that appellant had spoken to him before that time, requesting that the next note falling due be paid out of appellant's deposit account; that the witness accordingly stamped the note falling due May 12, as paid and credited the account of the appellees with the amount and charged the same against the account of the appellant; that he notified appellees that the note had been paid in this way; that the appellees thereupon refused to accept the payment of the note, claiming that the contract had been forfeited for the nonpayment of taxes.

On cross-examination he testified that, according to his usual custom of doing business, the endorsement of the note as paid on the 17th of May, 1912, would indicate that was the date of its payment.

The appellee, Mrs. Scott, testified that she acted as the agent of her daughter, Ella Bradley, the other appellee; and further testified as follows: "I saw in the Gazette a notice of the death of Mrs. C. C. Holland, and when the taxes in 1912 fell due and the note which also fell due on the 12th of May and she failed to pay the taxes and note, I supposed this was the Mrs. C. C. Holland, and from the terms of the contract I considered it breached and forfeited and I paid the taxes myself," etc. She denied that since the payment of the taxes by her that there had been any tender of the taxes or the amount of the note, but further testified that the appellant came to her house and tendered to her "something that looked like

money," and she replied that he did not owe her anything. She denied that the cashier of the Citizens Bank was her agent. She admitted that the cashier of the bank had collected the previous notes for her, but stated that he was not her agent for any purpose; that the notes were in the bank for safe-keeping. She stated that the cashier of the bank informed her that he had credited her account with the payment of the note due May 12, 1912, and she told him at that time that the contract had been forfeited and she would not receive the payment of it. She considered the contract forfeited because the taxes had not been paid. She paid the taxes before the 16th of April; had authorized the cashier of the bank to pay them on the 10th or 11th. She paid them because she considered the contract at that time forfeited for the nonpayment of taxes.

The above are substantially the facts upon which the court found that the contract "was breached by the plaintiff" (appellant) "by his failure to pay the taxes due upon the said lots and premises for the year 1911 within the time prescribed by law;" and, further, "by his failure to pay the note due and payable on the 12th of May, 1912, according to the conditions and provisions of said contract," and upon these findings the court entered a decree dismissing the appellant's complaint for want of equity, and entered a judgment in favor of the appellees that they retain possession of the lots in controversy and for costs, etc. This appeal has been duly prosecuted.

*W. B. Rutherford,* for appellant.

1. Under our statutes the time for paying taxes runs from the first of January to the second Monday in June in each year, and the payment of taxes on the property in question at any time within said limits, would be "regular and seasonable" within the meaning of the contract. Kirby's Dig., §§ 7083-7087; 37 Cyc. 1158; 121 N. C. 569.

2. There was no failure to pay the note due on May 12, at its maturity The evidence shows that the notes

were placed in the bank for collection, that it was the agent of appellees in the matter, that it had collected the preceding notes and placed the amounts thereof to the credit of appellees and that by authority of appellant, who had money on deposit in the same bank for the purpose, it charged his account with the amount of this note and placed the same to the credit of appellees, when it fell due. The actual time of the stamping of the note as paid, is not material.

*W. A. Ratterree,* for appellees.

1. Taxes are due and payable at any time from the first Monday in January to and including the 10th day of April in each year, after which latter date the tax books are closed and the penalty attaches. Acts 1911, pp. 361-2, § 1; Kirby's Dig., § § 7083, 7084. If the taxes were not paid by appellant by the 10th day of April, they were not paid "regularly and seasonably," within the meaning of the contract, time being of the essence of the contract.

2. The court properly held that the contract was forfeited for failure to pay at its maturity the note due May 12, 1912. Time was of the essence of the contract, yet appellant, who obtained the assignment of the contract in time to have paid the note due on May 12, made no tender of the amount until "a day or two after he was notified by Charles X. Williams on the 17th of May." 48 Ark. 413; 54 Ark. 16; 61 Ark. 266; 7 Ves. 270; 9 Am. Law Reg. 146; 1 Johns, Ch. 369; 2 Story's Eq. Jur., § 76; 69 Am. St. Rep. 17; 134 U. S. 68; 91 Ark. 133; 76 Ark. 578; 95 Ark. 529.

WOOD, J., (after stating the facts). The court erred in finding that the appellant had violated the contract "by his failure to pay the taxes due upon said lots for the year 1911, within the time prescribed by law," and erred in holding that appellant had forfeited his rights under the contract by reason of such alleged failure.

(1) Under our revenue laws taxes are due and payable at any time from the first Monday in January to and including the 10th day of April in each year, and all taxes remaining unpaid after the 10th day of April are

delinquent, but the property is not forfeited to the State for the nonpayment of taxes until the second Monday in June next after the taxes are due and payable. If the taxes are not paid by the 10th of April in each year the party whose duty it is to pay the taxes is assessed a penalty of 10 per cent by reason of his failure to pay on that day, but he can pay the taxes and this penalty at any time before the second Monday in June and thus relieve his property from a forfeiture to the State. Act 415, Acts of 1911, p. 361; Kirby's Digest, § § 7083 to 7087 inc.

The owner's right to prevent a forfeiture of his land for the nonpayment of taxes continues, under our law, until the second Monday in June. If he fails to pay by that time his land is forfeited to the State and his right to discharge the taxes by payment is lost, and after that time he has a right of redemption which must be obtained under the procedure provided by law. See, 37 Cyc. p. 1158; Kirby's Digest, § § *supra,* and section 7095.

The contract did not specify any day on which the purchaser or his assignee should pay the taxes. That was left open, and therefore, as we construe the contract, the appellant had not failed to "regularly and seasonably" pay the taxes "lawfully imposed" upon said premises, provided he paid the same, or offered to pay the same, before the time fixed by law when the property should be forfeited to the State in case of a failure to pay the taxes. The contract did not contemplate a forfeiture of appellant's rights of property under the contract so long as appellant was able and ready to pay the taxes and penalties within the time prescribed by law when such taxes should be paid to prevent a forfeiture to the State.

(2) The court also erred in finding that appellant had forfeited his right under the contract "by his failure to pay the note due and payable on the 12th of May, 1912."

The facts set forth in the statement show that this note was paid. The notes were held by the Citizens Bank for collection. The appellant notified the cashier of the

bank before the day when the note became due to pay the same out of his general deposit with the bank. At the time the note was due appellant had on deposit with the bank a sum sufficient to make the payment. The cashier of the bank was the agent of the appellees to collect the note and was also the agent of the appellant to appropriate his funds on deposit with the bank to the payment of the note when same was due. The cashier of the bank, in pursuance of the directions of the appellant, endorsed the note as paid and credited appellees' account with the amount of the note. It was the duty of the cashier having the funds of the appellant on deposit and with instructions to appropriate the same to the payment of the note when the same became due, and with instructions from the appellees to collect the note when the same became due, to appropriate the money of appellant to the payment of the note on May 12, 1912, when the same was due. Although the endorsement on the note shows that the same was paid on May 17, yet equity treats that as done which should have been done, and, under the uncontroverted evidence, it is clear that under the provisions of the contract this note, in contemplation of the parties to the contract, was paid on May 12, 1912, and the failure of the cashier to make the proper entries on his books and the note showing such payment was but a clerical mistake and did not alter the fact of the actual payment of the note on the day it was due.

The decree of the chancellor, for the errors indicated, is therefore reversed and the cause is remanded with directions to enter a decree for appellant and for further proceedings not inconsistent with this opinion.